IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN "FARSHID DO"<br>c/o JDKatz Attorneys at Law<br>4800 Montgomery Ln, Ste 600<br>Bethesda, MD 20814<br>Plaintiffs,<br><br>v.<br><br>THE ISLAMIC REVOLUTIONARY<br>GUARD CORPS, MINISTRY OF<br>INTELLIGENCE AND SECURITY<br>OF THE ISLAMIC REPUBLIC OF<br>IRAN and DOES 1-50<br>c/o Ministry of Foreign Affairs<br>Khomeni Avenue, United Nations<br>Street Tehran, Iran<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:  Civil Action No. _____<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## **COMPLAINT**

### INTRODUCTION

1. This action is brought by Plaintiff John "Farshid" Doe ("Plaintiff"), a naturalized United States citizen proceeding under a pseudonym pursuant to Court order, against Defendants the Islamic Revolutionary Guard Corps ("IRGC"), the Ministry of Intelligence and Security of the Islamic Republic of Iran ("MOIS"), and DOES 1-50 (collectively, "Defendants") for damages arising from acts of torture, extrajudicial killing, hostage taking, and international terrorism.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1330, 28 U.S.C. § 1331, 28 U.S.C. § 1332, the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 note, the Justice Against Sponsors of Terrorism Act ("JASTA"), and the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333.

1

3. Plaintiff brings this action to seek redress for the brutal torture he personally endured during approximately eighteen months of imprisonment in Iran, the extrajudicial killing of his father, the torture of his siblings, and the ongoing campaign of terror, intimidation, harassment, and physical attacks that has followed him for over four decades across multiple countries, including within the United States, most recently in Germany in early 2025.

4. Defendants' acts were intended to intimidate and coerce Plaintiff and his family, to retaliate against them for his father's service in the previous Iranian government, and to silence any potential opposition to the Islamic Republic regime.

5. The actions of Defendants constitute grave breaches of international law, violations of fundamental human rights, and acts of international terrorism as defined by United States and international law.

## PARTIES

6. Plaintiff John "Farshid" Doe is a naturalized United States citizen. Plaintiff has resided in the United States since his escape from Iran in approximately 1980. Plaintiff proceeds under a pseudonym pursuant to Court order due to well-founded fears of severe physical harm, retaliation, and threats to personal safety that would result from public disclosure of his identity in litigation against Iranian government instrumentalities.

7. Plaintiff is the son of a high-ranking official who served as the head of interrogations under the Shah's regime in Isfahan, Iran. Plaintiff's father was targeted for execution by the Islamic Republic following the 1979 revolution; his name appeared on the list of the first 52 people to be executed by the new regime. Plaintiff's father was forced to spend millions of dollars and required assistance from the United States government and CIA to escape Iran.

8. Plaintiff has standing to bring this action as a victim of torture and terrorism and as a close family member of a victim of extrajudicial killing. Plaintiff has suffered direct physical injury and severe emotional distress as a result of Defendants' actions.

9. Defendant Islamic Revolutionary Guard Corps ("IRGC") is the military organization established by Ayatollah Khomeini after the 1979 Iranian Revolution. The IRGC is an agency or instrumentality of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1603(b). On April 8, 2019, the United States designated the IRGC as a Foreign Terrorist Organization. The IRGC has engaged in terrorist activity and terrorism, including the acts described herein.

10. Defendant Ministry of Intelligence and Security of the Islamic Republic of Iran ("MOIS") is the primary intelligence organization of the Islamic Republic of Iran. MOIS is an agency or instrumentality of Iran within the meaning of 28 U.S.C. § 1603(b). MOIS agents and operatives have engaged in acts of terrorism, including the acts described herein.

11. Defendants DOES 1-25 are individuals who, at all relevant times, were officials, employees, agents, or operatives of the IRGC or MOIS who participated in, ordered, authorized, or had knowledge of the acts described herein but whose identities are currently unknown to Plaintiff.

12. Defendants DOES 26-50 are individuals who, at all relevant times, acted as agents of the IRGC or MOIS in carrying out the surveillance, harassment, intimidation, and attempted harm of Plaintiff in the United States and abroad, as described herein, but whose identities are currently unknown to Plaintiff.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1330, 1331, and 1605A. This suit falls within the "terrorism exception" to sovereign immunity under the FSIA, 28 U.S.C. § 1605A(a)(1), as it seeks money damages against agencies and instrumentalities of a foreign state designated as a state sponsor of terrorism for personal injury and death caused by acts of torture, extrajudicial killing, and hostage taking engaged in by officials, employees, or agents of Defendants while acting within the scope of their office, employment, or agency.

14. The acts alleged herein were perpetrated by officials, members, and agents of the IRGC and MOIS within their official capacities. Plaintiff was a U.S. citizen and national at the time of the ongoing acts of terrorism alleged herein, and the Islamic Republic of Iran has been designated a "state sponsor of terrorism" by the Secretary of State since January 19, 1984.

15. This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1330(b), and venue is proper pursuant to 28 U.S.C. § 1391(f)(4), as this is a civil action against agencies and instrumentalities of a foreign state.

16. Defendants are not immune from the jurisdiction of this Court under the FSIA, 28 U.S.C. § 1605A, because this action seeks money damages against agencies and instrumentalities of a foreign state designated as a state sponsor of terrorism for personal injury and death caused by acts of torture, extrajudicial killing, hostage taking, and the provision of material support or resources for such acts, which were engaged in by officials, employees, or agents of Defendants while acting within the scope of their office, employment, or agency.

## STATEMENT OF FACTS

*Background and Family History*

17. Plaintiff's father served as a high-ranking official under the Shah's regime, specifically as the head of interrogations in Isfahan, Iran.

18. Throughout his career, Plaintiff's father was known for his loyalty to the Shah and his commitment to maintaining order and security within Iran.

19. Plaintiff grew up in a close-knit family in Iran before traveling to the United States to pursue his education.

*The Iranian Revolution and Its Aftermath*

20. In 1979, the Iranian Revolution led to the overthrow of the Shah of Iran and the establishment of the Islamic Republic under the leadership of Ayatollah Ruhollah Khomeini.

21. During this period of political upheaval, individuals associated with the former regime were targeted for arrest, detention, torture, and execution by the new revolutionary government and its instrumentalities, including the IRGC and MOIS.

22. Plaintiff's father's name appeared on the list of the first 52 people to be executed by the Islamic Republic following the revolution, marking him and his family as primary targets of the new regime.

23. Following the revolution, the IRGC and MOIS confiscated the family's properties in Iran, including bank accounts, homes, land, and buildings.

*Arrest and Torture of Plaintiff and His Family*

24. Following the revolution, Plaintiff and his siblings feared for their safety, knowing that family members of former officials were being targeted by the revolutionary regime and its instrumentalities.

25. Plaintiff was arrested by agents of the IRGC and detained for approximately eighteen months.

26. During his detention, Plaintiff was subjected to various methods of torture, administered by agents and officials of the IRGC and MOIS, including but not limited to severe beatings, electrical torture, waterboarding, extended periods of forced standing, sleep deprivation, and threats of execution.

27. Throughout his detention and torture, Plaintiff was repeatedly interrogated about his father's activities and threatened with execution.

28. Plaintiff's siblings were also arrested and subjected to torture during this period. The torture inflicted upon Plaintiff's siblings caused lasting physical and psychological damage.

***Extrajudicial Killing of Plaintiff's Father***

29. Plaintiff's father was targeted for extrajudicial killing by the IRGC and MOIS due to his service under the Shah's regime.

30. Plaintiff's father was forced to spend millions of dollars and required assistance from the United States government and CIA to escape Iran and avoid execution.

31. The targeting of Plaintiff's father for execution was carried out without due process of law, as part of the IRGC's and MOIS's systematic campaign to eliminate individuals associated with the previous regime.

*Escape from Iran*

32. Recognizing that his life was in imminent danger if he remained in Iran, Plaintiff managed to escape the country in approximately 1980.

33. Upon arriving in the United States, Plaintiff settled and attempted to rebuild his life.

34. Despite being physically distant from Iran, the psychological trauma of his experiences—the torture he endured, witnessing the persecution of his family members, and the ongoing threat to his life—continued to affect every aspect of Plaintiff's life.

*Ongoing Surveillance, Harassment, and Attacks in the United States and Abroad*

35. Throughout the decades following his escape from Iran, Plaintiff has been subjected to an ongoing campaign of harassment, surveillance, and physical attacks orchestrated by agents of the IRGC and MOIS.

36. In 2019, while Plaintiff was visiting Arlington Cemetery in Washington, D.C., a car suddenly pulled in front of him, deliberately blocking his exit from the cemetery. The passenger of this vehicle shouted at Plaintiff, making an explicit death threat by stating that Plaintiff would soon be buried in a place like Arlington Cemetery.

37. That same year, Plaintiff was informed by a neighbor that unknown individuals had been observed filming his home while he was away, providing concrete evidence of the surveillance he had long suspected.

38. In 2020, while dining at a restaurant, Plaintiff was subjected to harassment from strangers who approached his table and hurled derogatory names at his father, making explicit reference to his father's work for the pre-revolutionary Iranian government. The specific nature

of these insults, referring to details of his father's career that would not be known to the general public, strongly suggests that these individuals were either agents of the IRGC or MOIS or had been provided with specific information by such agents.

39. Also in 2020, Plaintiff was the victim of a physical assault while shopping at a grocery store in Encino, California, when multiple individuals attacked him without provocation. During this assault, the attackers pushed, kicked, and punched Plaintiff while explicitly blaming him for his father's work in Isfahan, again demonstrating specific knowledge that would not be available to random individuals.

40. In 2020, while on a boat ride in Istanbul, Turkey, Plaintiff was approached by three individuals who verbally tormented him, made specific references to his father, and physically assaulted him by pushing him down the stairs on the boat. When other passengers came to Plaintiff's aid, the attackers claimed the incident was an accident, a common tactic used to disguise targeted violence as a random occurrence.

41. In 2021, during a trip to Yokohama, Japan, a vehicle deliberately attempted to run Plaintiff over as he was crossing a road. The occupants of this vehicle shouted Islamic slogans as they sped away, creating a clear connection between this attempted vehicular homicide and the Iranian regime.

42. In 2022, Plaintiff was assaulted at a NASA conference at UCLA. During the assault, one attacker squeezed Plaintiff's shoulders, causing pain, and mentioned Plaintiff's father's operations in Isfahan. One of the attackers punched Plaintiff, causing him to fall to the floor. The Plaintiff shouted for help, and the attackers fled when others came to his aid.

43. In early 2025, Plaintiff was severely beaten by four individuals in Germany. This attack was so severe that Plaintiff required surgery and continues to receive ongoing medical treatment for injuries sustained in the assault.

44. The attacks continuing through early 2025—more than 40 years after the events in Iran—demonstrate that this is a persistent campaign of transnational repression rather than a temporary threat.

45. As a result of the stress and anxiety caused by these ongoing threats and harassment, Plaintiff has suffered severe psychological trauma and physical health consequences.

## FIRST CAUSE OF ACTION

*(Torture – Violation of the Torture Victim Protection Act)*

46. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

47. The Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note, creates a cause of action against individuals who, under actual or apparent authority, or color of law, of any foreign nation, subject an individual to torture.

48. The acts of torture inflicted upon Plaintiff as described above, including beatings, electrical torture, waterboarding, and other extremely painful methods, were deliberately and intentionally inflicted by officials, employees, and agents of the IRGC and MOIS.

49. These acts of torture were inflicted while the perpetrators were acting under the actual or apparent authority, or color of law, of the Islamic Republic of Iran, through the IRGC and MOIS.

50. As a direct and proximate result of the torture inflicted upon Plaintiff by Defendants, Plaintiff has suffered and continues to suffer severe, lasting physical and emotional injuries.

## SECOND CAUSE OF ACTION

*(Extrajudicial Killing – Foreign Sovereign Immunities Act)*

51. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

52. The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, creates a federal cause of action against agencies and instrumentalities of a foreign state that is or was a state sponsor of terrorism for personal injury or death caused by acts of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such acts.

53. The Islamic Republic of Iran has been continuously designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 4605(j)) since January 19, 1984.

54. The targeting of Plaintiff's father for extrajudicial killing by the IRGC and MOIS was an act of extrajudicial killing as defined by the TVPA and actionable under the FSIA.

55. As a close family member of a victim of extrajudicial killing, Plaintiff has standing to bring this action under the FSIA.

### THIRD CAUSE OF ACTION

*(Hostage Taking – Foreign Sovereign Immunities Act)*

56.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

57.     The FSIA, 28 U.S.C. § 1605A, creates a federal cause of action against agencies and instrumentalities of a foreign state that is or was a state sponsor of terrorism for personal injury or death caused by acts of hostage taking or the provision of material support or resources for such acts.

58.     The detention of Plaintiff and his siblings by the IRGC and MOIS for approximately eighteen months constituted hostage taking within the meaning of the FSIA because they were seized and detained, threatened with continued detention, injury, and death, and these threats were made to compel them to provide information and to deter any opposition to the revolutionary regime.

59.     As a direct and proximate result of the hostage taking of Plaintiff and his family members by Defendants, Plaintiff has suffered severe physical injuries, emotional distress, and psychological trauma.

### FOURTH CAUSE OF ACTION

*(Terrorism – Foreign Sovereign Immunities Act)*

60.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61.     The ongoing campaign of harassment, intimidation, threats, and physical attacks against Plaintiff described above constitutes acts of international terrorism as defined by United States and international law.

62. These acts, which include the 2019 death threat at Arlington Cemetery, the surveillance of Plaintiff's home, the physical assault in Encino, California in 2020, the attack on the boat in Istanbul in 2020, the attempted vehicular assault in Yokohama, Japan in 2021, the assault at the NASA conference at UCLA in 2022, and the severe beating in Germany in 2025, were intended to intimidate and coerce Plaintiff and to retaliate against him for his father's association with the former regime.

63. The IRGC and MOIS provided material support and resources for these acts of terrorism, including funding, training, intelligence, and logistical support to the individuals who carried out these acts.

64. As a direct and proximate result of these acts of terrorism, Plaintiff has suffered and continues to suffer severe physical and psychological injuries.

**FIFTH CAUSE OF ACTION**

*(Intentional Infliction of Emotional Distress – Foreign Sovereign Immunities Act)*

65. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66. The FSIA, 28 U.S.C. § 1605A, permits claims for intentional infliction of emotional distress against agencies and instrumentalities of foreign states designated as state sponsors of terrorism.

67. The conduct of Defendants as described above was extreme and outrageous and exceeded all bounds of decency. Such conduct was specifically intended to cause Plaintiff severe emotional distress, and did in fact cause Plaintiff severe emotional distress.

68.     As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress manifesting in physical symptoms including sleep disturbances and other physical manifestations of psychological trauma.

### SIXTH CAUSE OF ACTION

*(Assault and Battery – Foreign Sovereign Immunities Act)*

69.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

70.     The FSIA, 28 U.S.C. § 1605A, permits claims for assault and battery against agencies and instrumentalities of foreign states designated as state sponsors of terrorism.

71.     The physical attacks against Plaintiff described above, including the torture inflicted upon Plaintiff during his detention, the physical assault in Encino, California in 2020, being pushed down stairs on a boat in Istanbul in 2020, the attempted vehicular assault in Yokohama, Japan in 2021, the assault at the NASA conference at UCLA in 2022, and the severe beating in Germany in 2025, constituted batteries upon Plaintiff.

72.     Additionally, Defendants' conduct created a reasonable apprehension of immediate harmful contact with Plaintiff's person, constituting assault.

73.     As a direct and proximate result of these assaults and batteries, Plaintiff has suffered physical injuries, pain, suffering, and emotional distress.

### SEVENTH CAUSE OF ACTION

*(Civil Conspiracy – Foreign Sovereign Immunities Act)*

74.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

75. Defendants and their officials, employees, and agents conspired, confederated, and agreed to commit the tortious acts described above against Plaintiff and his family members.

76. This conspiracy involved multiple individuals and entities acting in concert over a period of decades to carry out a coordinated campaign of persecution against Plaintiff and his family.

77. As a direct and proximate result of this conspiracy, Plaintiff has suffered the injuries and damages described throughout this Complaint.

## PRAYER FOR RELIEF

78. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. Awarding Plaintiff compensatory damages in an amount to be determined at trial, but not less than $100,000,000, for the physical, psychological, and emotional injuries he has suffered;

B. Awarding Plaintiff compensatory damages for the extrajudicial killing of his father in an amount to be determined at trial, but not less than $100,000,000;

C. Awarding Plaintiff economic damages for medical expenses, therapy costs, lost earning capacity, and other financial losses in an amount to be determined at trial, but not less than $10,000,000;

D. Awarding Plaintiff punitive damages in an amount to be determined at trial, but not less than $500,000,000, that is sufficient to punish Defendants for their outrageous conduct and to deter them and others from similar conduct in the future;

E. Awarding Plaintiff prejudgment and post-judgment interest;

F. Awarding Plaintiff his costs and reasonable attorneys' fees incurred in this action; and

G. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

79. Plaintiff demands a trial by jury on all issues so triable.

Dated February 4, 2026

Respectfully submitted,

      /s/Jeffrey D. Katz
Jeffrey D. Katz Bar#17071
JDKatz, P.C.
4800 Montgomery Avenue, Suite 600
Bethesda, MD 20814
Phone: (240) 743-5408
Email: Jeffrey@JDKatz.com