**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN "FARSHID DO,"<br><br>  Plaintiff,<br><br>  v.<br><br>THE ISLAMIC REVOLUTIONARY<br>GUARD CORPS, *et al.*,<br><br>  Defendants. | Civil Action No. 26-334 |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff is a naturalized citizen who has resided in the United States for over four decades since fleeing Iran.  <u>See</u> ECF No. 1 (Compl.), ¶ 6.  He, along with his family, was allegedly targeted by the Islamic Republic of Iran because of his father's role as a high-ranking official in the previous regime.  <u>Id.</u>, ¶¶ 7, 28.  He brings this action against the Islamic Revolutionary Guard Corps (IRGC), the Ministry of Intelligence and Security of the Islamic Republic of Iran (MOIS), and officials and agents of both groups, alleging that Defendants tortured him during his imprisonment in Iran and have continued to subject him to "an ongoing campaign of harassment, surveillance, and physical attacks."  <u>Id.</u>, ¶¶ 25–27, 35.  All told, Plaintiff brings seven causes of action under the Foreign Sovereign Immunities Act for this treatment, seeking compensatory and punitive damages.  <u>Id.</u>, ¶¶ 46–78.

Fearful that disclosure of his identity would subject him and his family to "physical harm, retaliation, and threats to personal safety," he moved to proceed pseudonymously.  <u>See</u> ECF No. 2 (Mot.) at 1–3.  The Court denied Plaintiff's initial Motion as it did not explain why pseudonymity was warranted where the risk of retaliatory harm stemmed only from Defendants,

1

who would have access to his identity.  See Minute Order of Feb. 24, 2026.  Plaintiff has now

renewed his Motion, elaborating on the harm from others that could arise if his identity were

publicly disclosed in connection with this lawsuit.  See ECF No. 3 (Renewed Mot.).  The Court

will grant the Motion, subject to any further consideration by the United States District Judge to

whom this case is randomly assigned.  See LCvR 40.7(f) (providing that Chief Judge shall "hear

and determine . . . motion[s] to file a pseudonymous complaint"); id. 5.1(h)(1) ("Absent statutory

authority, no case or document may be sealed without an order from the Court.").

## I.    Legal Standard

Generally, a complaint must identify the plaintiffs.  See Fed. R. Civ. P. 10(a); LCvR

5.1(c)(1).  This identification requirement reflects the "presumption in favor of disclosure [of

litigants' identities], which stems from the 'general public interest in the openness of

governmental processes,' and, more specifically, from the tradition of open judicial

proceedings."  In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found.

v. U.S. Sent'g Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)).  A party moving to proceed

pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such

secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its

own name."  In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020).  As a result, the court must

"'balance the litigant's legitimate interest in anonymity against countervailing interests in full

disclosure'" by applying a "flexible and fact driven" balancing test.  Id. (quoting In re Sealed

Case, 931 F.3d at 96).  That test assesses "five non-exhaustive factors":

> [1] whether the justification asserted by the requesting party is merely to avoid the
> annoyance and criticism that may attend any litigation or is to preserve privacy in a
> matter of [a] sensitive and highly personal nature;

> [2] whether identification poses a risk of retaliatory physical or mental harm to the
> requesting party or[,] even more critically, to innocent non-parties;

[3] the ages of the persons whose privacy interests are sought to be protected;

[4] whether the action is against a governmental or private party; and, relatedly,

[5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (quoting In re Sealed Case, 931 F.3d at 97) (first alteration in original).

## II.     Analysis

At this initial stage, Plaintiff has met his burden to show that his privacy and safety interests outweigh the public's presumptive and substantial interest in learning his identity.

First, as the Complaint makes clear, Plaintiff does not seek to proceed under a pseudonym "merely to avoid the annoyance and criticism that may attend any litigation," but rather to "preserve privacy in a matter of [a] sensitive and highly personal nature." Id. at 326 (quoting In re Sealed Case, 931 F.3d at 97) (alteration in original).  Relevant here, privacy can include "maintaining [his] and [his] family members' safety." Sponsor v. Mayorkas, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023); see also R.A. v. Islamic Republic of Iran, No. 23-2606, ECF No. 4 (Mem. Op. & Order) at 3 (D.D.C. Sept. 12, 2023) ("In the Complaint, they describe the severe violence and threats that they have already faced at the hands of proxy militia organizations and that they could experience after filing this lawsuit if their identities were made public . . . .  In light of this prior violence, Plaintiffs seek to avoid much graver harms than mere annoyance and criticism.").

In his Complaint, Plaintiff describes the violence and harassment he and his family have faced over the past few decades and could continue to face if his identity were made public. See Compl., ¶¶ 36–43.  Plaintiff also alleges that his siblings were arrested and tortured, and that his father was targeted for extrajudicial killing. Id., ¶¶ 28–31.  He further explains that this risk of harm is not just from Defendants, but also from third-party proxies, who have a history of

attempting to carry out Defendants' aims on American soil.  See Renewed Mot. at 8–9.  To be fair, many instances Plaintiff highlights concern third parties' acting at the specific direction of Defendants, who will know Plaintiff's identity through this litigation.  Id. ("IRGC identifies targets, then recruits non-state criminal proxies . . . to carry out surveillance and assassination.").  That same pattern could play out here.  Plaintiff, however, also demonstrates that there is a potential risk from sleeper cells, lone wolves, or other third-party criminal proxies, who might seek to harm Plaintiff on their own accord.  Id. at 5–8.  The pleadings thus demonstrate — at this initial stage — that Plaintiff's interest is not in merely avoiding annoyance or criticism, but rather in preserving privacy to protect his and his family's safety from third-party proxies.

For similar reasons, the second factor concerning the "risk of retaliatory physical or mental harm" to Plaintiff and to "innocent non-parties" counsels in favor of granting the Motion.  In re Sealed Case, 971 F.3d at 326 (citation omitted).  Plaintiff has alleged specific instances of physical harm and abuse, most recently in 2025.  See Compl., ¶¶ 36–44.  Additionally, as Plaintiff highlights, there are numerous examples of Iran's targeting of dissidents abroad, often via third-party proxies.  See Mot. at 4; Renewed Mot. at 8–10.  Plaintiff alleges that this harm could come not only at the direction of Defendants, but also from third parties acting on their own, seeking to carry out Defendants' aims.  See Renewed Mot. at 10 (arguing that disclosure on public docket will provide proxies "a publicly available roadmap for Plaintiff's assassination").  Furthermore, the innocent non-parties in this case are clearly Plaintiff's family, many of whom have allegedly faced similar treatment and are thus equally vulnerable to the risk of retaliatory physical harm.  See Compl., ¶ 28.  To be sure, Plaintiff does not attach an affidavit supporting these claims, cf. Sponsor, 2023 WL 2598685, at *2 (referencing affidavits in support of motion), and "[d]iscovery may well render his concerns unsupported and unwarranted."  Doe v. Federal

Republic of Germany, 680 F. Supp. 3d 1, 5 (D.D.C. 2023).  At this early stage, however, the Court finds that Plaintiff's allegations are sufficient to establish that revealing his name publicly in connection with this litigation poses a risk of harm from third-party proxies.

The third factor, in contrast, supports disclosure.  While Plaintiff outlines concerns about family members in his Complaint and Motion, nothing suggests that his case implicates the privacy of minors.  See Mot. at 1–7; In re Sealed Case, 971 F.3d at 326.

The fourth factor supports the case for pseudonymity.  "[A]nonymous litigation is more acceptable when the defendant is a governmental body because government defendants do not share the concerns about reputation that private individuals have when they are publicly charged with wrongdoing."  J.W. v. District of Columbia, 318 F.R.D. 196, 201 (D.D.C. 2016) (cleaned up).  Here, Plaintiff has sued foreign governmental actors, not private litigants.  Furthermore, Plaintiff has filed this case "seek[ing] to vindicate [his] rights[,] . . . and anonymity appears to be necessary to provide [him] the opportunity to do so."  Asylum Seekers Trying to Assure Their Safety v. Johnson, 2023 WL 417910, at *4 (D.D.C. Jan. 26, 2023).  Finally, "there is nothing about the nature of these proceedings that creates any need for transparency with respect to the plaintiff['s] identit[y] or address[]."  Chang v. Republic of S. Sudan, 548 F. Supp. 3d 34, 38 (D.D.C. 2021).  The fourth factor thus weighs in Plaintiff's favor.

The fifth and final factor — whether allowing Plaintiff to proceed pseudonymously would pose a "risk of unfairness" — tilts in the same direction.  In re Sealed Case, 971 F.3d at 326 n.1.  Plaintiff has offered to disclose "[his] identity through counsel and discovery, subject to appropriate protective orders," if Defendants show up to litigate.  See Mot. at 6.  Defendants thus do not face a risk of unfairness.  In addition, Defendants remain free to request any further

information they deem necessary to the full and fair defense of this case or ask the Court to reconsider this decision.

Finally, the Court highlights that this an <u>initial</u> decision to permit Plaintiff to proceed pseudonymously.  In the (unlikely) scenario where Defendants appear to defend this suit, the balance of factors might tip the other way.  <u>See</u> <u>John Doe I, John Doe II, & John Doe III v. Sabeti</u>, 2025 WL 4348642, at *1 (M.D. Fla. Aug. 12, 2025) (reconsidering initial grant to proceed pseudonymously in Torture Victim Protection Act case upon defendant appearance).  In any event, Plaintiff has made an initial showing that his concern extends beyond Defendants' learning his identity to the risk that third parties, including potential criminal proxies, could obtain this information and act on Defendants' behalf to harm him and his family.  The Court will thus grant Plaintiff's Motion, subject to reconsideration by the District Judge to whom this case is randomly assigned.

In sum, although the third factor supports disclosure, the remaining factors weigh in favor of granting Plaintiff's Motion to proceed pseudonymously.

The Court ORDERS that:

1.  Plaintiff's [3] Motion to Proceed Under Pseudonym is GRANTED, subject to any further consideration by the United States District Judge to whom this case is randomly assigned;

2.  All parties shall use the pseudonyms listed in the Complaint in all documents filed in this action; and

3.  Within fourteen days of this Order, Plaintiff shall file on the public docket a pseudonymous version of his [3] Motion.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  April 13, 2026